

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 0:21cv62288**

QUICKLOOK, INC.,

Plaintiff,

v.

GLENN A. NAPPI,

Defendant.

## COMPLAINT

Plaintiff, QUICKLOOK, INC. ("Plaintiff"), by and through undersigned counsel, sues Defendant, GLENN A. NAPPI ("Defendant"), and alleges as follows:

## PARTIES

1. QUICKLOOK, INC. is a Delaware corporation organized under the laws of the State of Delaware and duly authorized to transact business as a foreign corporation in Florida, having a principal place of business in Broward County, Florida.

2. Upon information and belief, GLENN A. NAPPI is a resident of Palm Beach County, Florida, has an address of 6045 Winding Brooke Way, Delray Beach, FL 33484, and is otherwise *sui juris*.

## JURISDICTION AND VENUE

3. This is an action for damages for violation of the Florida Uniform Trade Secrets Act, violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030), and violation of the Computer Abuse and Data Recover Act (CADRA), Florida Statute § 668.801.

1

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.

5. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.SC. 1367, as those state law claims are so related to the CFAA claim that they form part of the same case or controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendant resides within this judicial district and a substantial portion of the acts and omissions giving rise to the claim set forth herein occurred within this judicial district.

7. This court has personal jurisdiction over Defendant because, upon information and belief, Defendant resides within the State of Florida and, therefore, within this judicial district.

## FACTUAL BACKGROUND

8. Plaintiff is the owner by assignment of all right, title and interest in and to a pair of computer software applications known as the OUR VIRTUAL OFFICE$^{SM}$ Platform ("OVO Platform") and the OUR VIRTUAL OFFICE$^{SM}$ Database Administration Manager ("OVO Database Manager") (the OVO Platform and the OVO Database Manager collectively referred to herein sometimes as the "OVO Programs"). The OVO Programs operate together as part of Plaintiff's proprietary and highly valuable peer-to-peer video communication system, which allows users from anywhere in the world to connect with each other as though they were all present in the same physical office.

9. As original works of authorship authored by and/or assigned to Plaintiff, Plaintiff owns copyright to the OVO Programs.

10. As works qualifying for protection under Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq.*, the OVO Programs, i.e., the proprietary data and code underlying Plaintiff's OVO Platform and OVO Database Manager products that allow users from anywhere in the world to

2

connect with each other as though they were all present in the same physical office, are secret, i.e., not generally known, and have always been the subject of Plaintiff's reasonable efforts to keep them secret.

11. The OVO Programs operate together to give Plaintiff a competitive edge and derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use. The information in the database and code for the OVO Programs contains a significant amount of valuable data, data compilations and original source code commands that are proprietary to Plaintiff, e.g., the OVO Programs contain original, secret, code which functionally allows the Programs to provide for, among other things: (1) a virtual network directory; (2) user snapshots; (3) user guest access; (4) office and mobile connectivity; (5) user activity reporting; (6) platform function and feature administration; (7) OVO Program support; and (8) personalized conference rooms.

12. Defendant is a computer software programmer with experience using a programming platform known as "Filemaker."

13. Defendant was formerly an independent contractor to a Florida software developer known as SGK Development, Inc. ("SGK"), formerly a Florida for profit corporation but presently administratively dissolved as of September 25, 2020.

14. Neither SGK nor Defendant created, authored or wrote the code for any portion of the OVO Programs, nor are SGK or Defendant authors or owners of any portion of either of the OVO Programs.

15. None of the services provided to SGK by Defendant resulted in software code that is employed in either of the OVO Programs.

3

16. Plaintiff is owned by O'Neal Enterprise International, Inc., which in turn owns, among other things, a wholly owned subsidiary known as UQvideo, Inc. ("UQvideo"), a Delaware corporation.

17. UQvideo owns all right, title and interest to a computer program called "UQvideo" (the "UQvideo Application").

18. Plaintiff owns all right, title and interest to a computer program called "QuickLook" (the "QuickLook Application").

19. None of the code used in the UQvideo or QuickLook Applications are incorporated in either of the OVO Programs.

20. In the past and from time to time, SGK provided programming services to UQvideo for the UQvideo Application and to Plaintiff for the QuickLook Application, and some of those programming services were provided by Defendant.

21. In or around March, 2021, SGK informed Defendant that SGK would no longer have work for Defendant, and advised that he would no longer be paid after May 31, 2021.

22. The OVO Programs, however, were stored on a password-protected cloud-based computer server (the "Server") operated by Amazon Web Services that also housed other programs, including the UQvideo Application and the QuickLook Application.

23. Defendant had authorization for a limited time to the source code for the UQvideo Application and the QuickLook Application on the Server for purposes of providing coding services to SGK for the benefit of Plaintiff.

24. Defendant was never authorized to access the source code for either of the OVO Programs on the Server or anywhere else.

25. Defendant's authorized access to the Server was terminated on or before May 31, 2021. Any access to the Server by Defendant after May 31, 2021 would have been without authorization.

4

26. The Server is a "computer" as defined in 18 U.S.C. 1030(e)(1).

27. The server is used in or affecting interstate and/or foreign commerce or communications.

28. The server is a "protected computer" as defined in 18 U.S.C. 1030(e)(2)(B).

29. Defendant intentionally accessed the Server without authorization, and thereby obtained information from the Server. (18 U.S.C. 1030(a)(2)(C))

30. Defendant intentionally accessed the OVO Programs on the Server without authorization, and thereby obtained copies of the OVO Programs from the Server. (18 U.S.C. 1030(a)(2)(C))

31. At some point in time, Defendant secretly installed a "back door" into the Server under the alias "Karen Wheeler" so that he could secretly access the Server without authorization.

32. Plaintiff believes that the back door was installed by Defendant between June 1, 2021 and June 3, 2021.

33. The use of the arbitrary alias "Karen Wheeler" by Defendant in connection with the back door was to conceal the existence of the back door so that Plaintiff did not realize that Defendant had a means to access the Server without authorization or detection.

34. When Defendant installed the back door, he did so intentionally and without authorization, and, as a result of such conduct: (i) caused damage by impairing the integrity of the OVO Programs and the Server; and (ii) caused loss measured by (a) the cost to Plaintiff of responding to the conduct and the threat posed by the back door, (b) the cost of the damage assessment necessitated by the conduct; (c) the cost to Plaintiff of having to recertify the OVO Programs to be compliant with applicable laws and regulations, and (4) the cost to Plaintiff of restoring and securing the Server to the condition it was in prior to Defendant's attack. 18 U.S.C. 1030(a)(5)

35. Defendant knowingly and with intent to defraud accessed the Server without authorization, or exceeded the access to which he was authorized, and by means of such conduct furthered the

intended fraud by obtaining copies of the OVO Programs, which are highly valuable. 18 U.S.C. 1030(a)(4)

36. Defendant knowingly and with intent to defraud accessed the Server without authorization, or exceeded the access to which he was authorized, and by means of such conduct furthered the intended fraud by the back door to the Server and to the OVO Programs, which are highly valuable.

37. Defendant intentionally accessed the Server without authorization when he installed the back door on the Server.

38. Defendant has admitted to making an unauthorized copy of all or a portion of the OVO Programs in a text to Daniel O'Neal, a director and chairman of Plaintiff, dated October 3, 2021 (the "Nappi Text"). A true and correct reproduction of the Nappi Text is attached hereto as **Exhibit "A."**

39. By sending the Nappi Text to Daniel O'Neal, Defendant, with the intent to extort something of value from Plaintiff, transmitted in commerce a communication containing a demand or request for money or other thing of value in relation to the impairment of the integrity of the OVO Programs and/or the security of the Server.   18 U.S.C. 1030(a)(7)(C)

40. SGK discontinued engaging Defendant to provide any computer programming services after May 31, 2021.

41. In the course of providing services to UQvideo and Plaintiff as an independent contractor to SGK, Defendant had access to the Server, but was only authorized to access the UQvideo and QuickLook Applications.

42. Defendant did not have authorization at any time to access the OVO Programs.

43. On or before the time that SGK discontinued using Defendant for any computer programming services, Defendant's authorization to access the Server was terminated

6

44. At some time in June or July, 2021, Defendant accessed the Server, after his authorization to access the Server at all was terminated, and copied all or a portion of the OVO Programs.

45. Defendant knowingly and intentionally accessed the Server without authorization from Plaintiff, or accessed the Server in excess of his authorization.

46. Defendant was never authorized to access, alter and/or obtain copies of the OVO Programs on the Server or anywhere else.

47. Defendant was never authorized to install a back door on the Server or anywhere else.

### COUNT I:
### Violation of Florida Uniform Trade Secrets Act
### (Fla. Stat. 688.001, *et seq)*

48.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 47 above as if fully set forth herein.

49.     Plaintiff owns trade secret rights to all or a portion of the source code for the OVO Programs underlying Plaintiff's OVO Platform and OVO Database Manager products.

50.     There is information in the database and code for the OVO Programs that operate together to give Plaintiff a competitive edge and that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

51.     There is information in the database and code for the OVO Programs that has always been the subject of Plaintiff's reasonable efforts to keep it secret

52.     Defendant misappropriated Plaintiff's trade secret by improper acquisition.

53.     Defendant acquired the trade secret by improper means.

54.     Defendant knew, or had reason to know, that his acquisition of the code was done through improper means.

7

55.	Defendant acquired the trade secret from Plaintiff without Plaintiff's permission at a time when Plaintiff was taking reasonable precautions to maintain the secrecy of the trade secret.

56.	Defendant's misappropriation of Plaintiff's trade secret violates Florida's Uniform Trade Secrets Act.

57.	Defendant's conduct of creating a "back door" access portal to the Server and the OVO Programs, and making an unauthorized copy of the OVO Programs, violates Florida's Uniform Trade Secrets Act.

58.	Defendant misappropriated the OVO Programs, or proprietary portions thereof that are the property of Plaintiff, by improper means, including theft, misrepresentation, and/or breach of duty to maintain the secrecy of the OVO Programs.

59.	The code for the Programs is and has always been protected by a login/user ID and password.

60.	Defendant knew that he was acquiring Plaintiff's trade secret OVO Programs, or proprietary portions thereof, when he misappropriated them.

61.	Defendant's misappropriation was willful and malicious.

**WHEREFORE**, Plaintiff requests that the Court: (a) enjoin Defendant, and all those in active concert or participation with Defendant, from using or threatening to use the OVO Programs or any portion thereof; (b) award Plaintiff the actual loss which it has sustained by the misappropriation, including the profits lost by Plaintiff and Plaintiff's economic damages, and award Plaintiff the unjust enrichment realized by Defendant caused by the misappropriation that is not taken into account in computing Plaintiff's actual loss; (c) award Plaintiff a reasonable royalty for any unauthorized disclosure of Plaintiff's trade secrets by Defendant; (d) award Plaintiff exemplary damages in an amount not exceeding twice any award of damages due to the willful and malicious nature of the misappropriation; (e) order Defendant to identify any and every

8

person to whom Defendant gave any electronic or hard copies of the OVO Programs or portions thereof; (f) order Defendant to certify, under oath, that he has: (i) destroyed all electronic or hard copies of the OVO Programs or portions thereof copied by Defendant and (ii) caused any other person who Defendant gave any electronic or hard copies of the OVO Programs or portions thereof copied by Defendant to destroy same; (g) award Plaintiff its reasonable attorney's fees and costs in connection with this action; and (h) grant such further relief as the court may deem just and equitable.

## COUNT II:
### Violation of Defend Trade Secrets Act
### (18 U.S.C. 1832, et seq)

62. Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 47 above as if fully set forth herein.

63. Plaintiff owns trade secret rights to the all or a portion of the source code for the OVO Programs underlying Plaintiff's OVO Platform and OVO Database Manager products.

64. There is information in the database and code for the OVO Programs that operate together to give Plaintiff a competitive edge and that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

65. There is information in the database and code for the OVO Programs that has always been the subject of Plaintiff's reasonable efforts to keep it secret

66. Defendant misappropriated Plaintiff's trade secret by improper acquisition.

67. Defendant acquired the trade secret by improper means.

68. Defendant knew, or had reason to know, that his acquisition of the code was done through improper means.

9

69. Defendant acquired the trade secret from Plaintiff without Plaintiff's permission at a time when Plaintiff was taking reasonable precautions to maintain the secrecy of the trade secret.

70. Defendant's misappropriation of Plaintiff's trade secret violates the Defend Trade Secrets Act, 18 U.S.C 1833, *et seq.*.

71. Defendant's conduct of creating a "back door" access portal to the Server and the OVO Programs, and making an unauthorized copy of the OVO Programs, violates the Defend Trade Secrets Act.

72. Defendant misappropriated the OVO Programs, or proprietary portions thereof that are the property of Plaintiff, by improper means, including theft, misrepresentation, and/or breach of duty to maintain the secrecy of the OVO Programs.

73. The code for the Programs is and has always been protected by a login/user ID and password.

74. Defendant knew that he was acquiring Plaintiff's trade secret OVO Programs, or proprietary portions thereof, when he misappropriated them.

75. Defendant's misappropriation was willful and malicious.

**WHEREFORE**, Plaintiff requests that the Court: (a) enjoin Defendant, and all those in active concert or participation with Defendant, from using or threatening to use the OVO Programs or any portion thereof; (b) award Plaintiff the actual loss which it has sustained by the misappropriation, including the profits lost by Plaintiff and Plaintiff's economic damages, and award Plaintiff the unjust enrichment realized by Defendant caused by the misappropriation that is not taken into account in computing Plaintiff's actual loss; (c) award Plaintiff a reasonable royalty for any unauthorized disclosure of Plaintiff's trade secrets by Defendant; (d) award Plaintiff exemplary damages in an amount not exceeding twice any award of damages due to the willful and malicious nature of the misappropriation; (e) order Defendant to identify any and every

person to whom Defendant gave any electronic or hard copies of the OVO Programs or portions thereof; (f) order Defendant to certify, under oath, that he has: (i) destroyed all electronic or hard copies of the OVO Programs or portions thereof copied by Defendant and (ii) caused any other person who Defendant gave any electronic or hard copies of the OVO Programs or portions thereof copied by Defendant to destroy same; (g) award Plaintiff its reasonable attorney's fees and costs in connection with this action; and (h) grant such further relief as the court may deem just and equitable.

## COUNT III:
### Violation of Computer Fraud and Abuse Act
### (18 U.S.C. 1030)

76. Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 47 above as if fully set forth herein.

77. Plaintiff has suffered damage caused by Defendant's violation of 18 U.S.C. 1030.

78. Plaintiff has suffered an aggregate loss during the immediately preceding 12-month period as a result of Defendant's conduct complained of herein of at least $5,000 in value.

79. Plaintiff's losses as a result of Defendant's conduct complained of herein include, but are not limited to, having to become recertified for HIPAA and Sarbanes-Oxley compliance, and having to resecure access limitations to the Server after discovering the back door installed by Defendant.

80. Plaintiff also incurred expenses as a result of Defendant's conduct in: (i) responding to the admission by Defendant that he had accessed the Server and made unauthorized copies of the OVO Programs without authorization; (ii) responding to the discovery that Defendant had installed a "back door" in the Server to further provide him with ongoing unauthorized access to the Server and the OVO Programs; and (iii) having to conduct a damage assessment when it was

11

learned directly from Defendant that Defendant had accessed the Server without authorization and had made a copy of the OVO Programs without Plaintiff's authorization.

81. Defendant intentionally accessed the Server without authorization, and thereby obtained information from the Server, in violation of 18 U.S.C. 1030(a)(2)(C)).

82. Defendant intentionally accessed the OVO Programs on the Server without authorization, and thereby obtained copies of the OVO Programs from the Server, in violation of 18 U.S.C. 1030(a)(2)(C)).

83. Defendant knowingly and with intent to defraud accessed the Server without authorization, or exceeded the access to which he was authorized, and by means of such conduct furthered the intended fraud by obtaining copies of the OVO Programs, which are highly valuable, in violation of 18 U.S.C. 1030(a)(4).

84. When Defendant installed the back door, he did so intentionally and without authorization, and, as a result of such conduct: (a) caused damage by impairing the integrity of the OVO Programs and the Server; and (b) caused loss measured by: (i) the cost to Plaintiff of responding to the conduct and the threat posed by the back door, (ii) the cost of the damage assessment necessitated by the conduct; (iii) the cost to Plaintiff of having to recertify the OVO Programs to be compliant with applicable laws and regulations, and (iv) the cost to Plaintiff of restoring and securing the Server to the condition it was in prior to Defendant's attack, in violation of 18 U.S.C. 1030(a)(5).

85. By sending the Nappi Text to Plaintiff's director and board chairman, Daniel O'Neal, Defendant, with the intent to extort something of value from Plaintiff, transmitted in commerce a communication containing a demand or request for money or other thing of value in relation to the impairment of the integrity of the OVO Programs and/or the security of the Server, in violation of 18 U.S.C. 1030(a)(7)(C).

86. Defendant's misappropriation was willful and malicious.

WHEREFORE, Plaintiff requests that the Court: (a) enjoin Defendant, and all those in active concert or participation with Defendant, from using or threatening to use the OVO Programs or any portion thereof; (b) award the actual damages suffered by Plaintiff, including Plaintiff's lost profits and economic damages suffered by Plaintiff; (c) award Plaintiff the Defendant's profits; (d) order Defendant to identify any other person to whom Defendant gave any electronic copies of the OVO Programs or portions thereof; (e) order Defendant to certify, under oath, that he has destroyed all electronic copies of the OVO Programs or portions thereof copied by Defendant, and has caused any other person who Defendant gave any electronic copies of the OVO Programs or portions thereof copied by Defendant to destroy same; (f) award Plaintiff its reasonable attorney's fees and costs in connection with this action; and (g) grant such further relief as the court may deem just and equitable.

## COUNT IV:
### Violation of Florida Computer Abuse and Data Recovery Act (CADRA)
### (Fla. Stat. § 668.801, et seq)

87. Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 47 above as if fully set forth herein.

88. Plaintiff is the owner of the OVO Programs stored on the Server, which is a "protected computer" as defined in Fla. Stat. 688.803.

89. Defendant knowingly, and with intent to cause harm or loss, obtained information, including copies of all or portions of the OVO Programs, from the Server without Plaintiff's authorization, causing Plaintiff harm and/or loss.

13

90. Defendant's conduct of creating a "back door" access portal to the Server and the OVO Programs, and making an unauthorized copy of the OVO Programs, violates Florida's Computer Abuse and Data Recovery Act.

91. Defendant misappropriated the OVO Programs, or proprietary portions thereof that are the property of Plaintiff, by improper means, including theft, misrepresentation, and/or breach of duty to maintain the secrecy of the OVO Programs.

92. Defendant knew that he was acquiring Plaintiff's trade secret Programs, or proprietary portions thereof, when he misappropriated them.

93. The Server is a "Protected Computer" as defined in Fla. Stat. 688.802(9)(c).

94. The Server is, and at all times germane was, protected by a "technological access barrier" as defined in Fla. Stat. 688.802(7).

95. Defendant was not an "authorized user" of the Server as defined in Fla. Stat. 688.802(1) at the time he accessed the Server to copy the OVO Programs, or proprietary portions thereof.

96. Defendant was not an "authorized user" of the Server as defined in Fla. Stat. 688.802(1) at the time he installed the back door access pathway to the Server and/or the OVO Programs.

97. Defendant circumvented a technological access barrier on the Server by installing the back door, and by accessing the Server through the back door.

98. Defendant's misappropriation was willful and malicious.

**WHEREFORE**, Plaintiff requests that the Court; (a) enjoin Defendant, and all those in active concert or participation with Defendant, from using or threatening to use the OVO Programs or any portion thereof; (b) award the actual damages suffered by Plaintiff, including Plaintiff's lost profits and economic damages suffered by Plaintiff; (c) award Plaintiff the Defendant's profits;

(d) order Defendant to identify any other person to whom Defendant gave any electronic copies of the OVO Programs or portions thereof; (e) order Defendant to certify, under oath, that he has destroyed all electronic copies of the OVO Programs or portions thereof copied by Defendant, and has caused any other person to whom Defendant gave any electronic copies of the OVO Programs or portions thereof to destroy same; (f) award Plaintiff its reasonable attorney's fees and costs in connection with this action; and (g) grant such further relief as the court may deem just and equitable.

Dated: November 5, 2021.

Respectfully,

/s/ **Kevin P. Crosby**
Kevin P. Crosby, Esq.
Florida Bar No. 654360
RUBIN & RUBIN
2055 S. Kanner Hwy.
Stuart, Florida 34994
Telephone: (772) 283-2004
Facsimile: (772) 283-2009
kcrosby@rubinandrubin.com
service@rubinandrubin.com
*Counsel for Plaintiff QuickLook, Inc.*

15